# AMERICAN ARBITRATION ASSOCIATION
## Consumer Arbitration Rules

In the Matter of the Arbitration between

Case Number: 01-23-0003-5650

Stacey Cohen (Claimant)
-vs-
Coinbase, Inc. and Toshi Holdings Pte. Ltd. (Respondents)

## AWARD OF ARBITRATOR

I, Patricia P. Hollenbeck, the UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, each represented by counsel, at an evidentiary hearing held on November 13 and 14, 2024, do hereby issue this AWARD as follows:

### Parties and Counsel

Claimant Stacey Cohen ("Cohen" or "Claimant") were represented by Kevin Conway and Denis McGrath of Conway & Conway, as well as Anthony Ciaccio of Weltz Law.

Coinbase, Inc. and Toshi Holdings Pte. Ltd. (collectively "Respondents") were represented by Saurish Appleby-Bhattacharjee and Alex Whitworth of Bryan Cave Leighton Paisner LLP.

### Witnesses

The following witnesses were duly sworn and presented testimony under oath: Stacey Cohen and Robert Lowry on behalf of Claimant, and Shivangi Gandhi on behalf of Respondents.

### Brief Factual Background/Contentions

Ms. Cohen maintained a Coinbase account since 2020. She is a Certified Public Accountant ("CPA") who has engaged in approximately 500 cryptocurrency transactions over the last several years.

On January 31, 2023, Claimant used the Coinbase Wallet app to swap 5.7 Ethereum ("ETH") tokens for 527,061.274 of Wolf Game Wool ("WOOL.") On March 14, 2023, Claimant, who was using the Coinbase Wallet app, observed that the value of her holding in WOOL had increased significantly. She alleges she was quoted a price of $.93[1] per token of WOOL valued at over $480,000 US Dollars

---

[1] Claimant's Statement of Claim alleges $.93 per share. In the pre-hearing brief and at the evidentiary hearing, Claimant revised her claim to $.91 per share.

("USD.") Based on this information, she initiated a trade to swap her shares in WOOL for ETH.

Claimant alleges that although she executed the trade, she did not receive the amount quoted in USD. Furthermore, because her exchange "slipped" more than 10%, it should have been cancelled pursuant to Respondents' Slippage Policy. The transaction was not cancelled, and Claimant received an amount 99% lower than what she anticipated. Claimant alleges she is entitled to damages of at least $472,633.63.

Respondents argue this transaction was accomplished using a decentralized exchange ("DEX")[2], a peer-to-peer marketplace where transactions occur directly between crypto traders without an intermediary. A DEX allows exchanging one cryptocurrency for another. The exchange is not for a fiat currency, such as USD. Furthermore, although the Coinbase Wallet app displayed USD during the swap process, that information was from a third party, and it was intended only to be illustrative. Claimant was not trading cryptocurrency for fiat currency. Furthermore, the blockchain[3] records of this transaction, which are not prepared by Respondents, are immutable—Claimant authorized a swap of her WOOL tokens for a minimum of 4.23 ETH.

Respondents also argue that before confirming the swap, Claimant was presented with Price-Impact Warnings because the asset had low liquidity, and the trade was large, which could negatively affect market price. Claimant acknowledged the price impact by clicking "Got it" during part of the transaction (which was reiterated on the following screen.) According to Respondents, Claimant received the warning and clicked on it, placing the swap of WOOL to ETH. Ultimately, Claimant received 4.356 ETH, which is exactly what she authorized, and therefore, she has no damages.

## Evidence Presented and Reviewed

In addition to the briefing on the dispositive motion, the Arbitrator has reviewed the pre-hearing briefs, all testimony and exhibits presented at the hearing (including the hearing transcripts), and argument of counsel.

## Testimony

Claimant graduated from the Wharton School at the University of Pennsylvania, with a degree in Economics, and is a CPA. She has had a Coinbase account since 2020, and is very experienced with cryptocurrency transactions.

Claimant's testimony makes numerous assertions, including the following: (1) she made cryptocurrency swaps based on the USD value listed in, and disseminated by, Coinbase Wallet; (2) she relied on the Slippage Policy; (3) she decided to make a swap on March 14, 2023 when she determined her position was worth $480,000. During the evidentiary hearing, Claimant also read portions of Claimant's Exhibit 7 (3/14/23 at 4:06 PM) stating, "there are two main reasons why a trade using a decentralized exchange might end up with less value references the slippage policy." Those two items are slippage and exchange rate ("before approving a trade quote, check to see if there is a warning of a price difference. This warning is important to review as it is stating the output is at a large difference from the spot price of the token at that moment.")

---

[2] Respondents allege Coinbase Wallet is not a DEX or an exchange.
[3] A blockchain is a decentralized public ledger of cryptocurrency transactions. It is immutable, meaning once the transaction is recorded, it cannot be changed.

On cross-examination, Claimant presented her position forcefully, but ultimately agreed she did not read the Coinbase Wallet Terms of Service ("TOS"), which indicates in pertinent part that users can swap using a DEX as demonstrated by the screenshots from Claimant's phone for the January and March 2023 swaps. She also agreed that she never exchanged WOOL for USD using Coinbase or Coinbase Wallet. Likewise, she never bought or sold WOOL for USD. Rather her transactions were for ETH to WOOL or vice-versa, pursuant to a conversion rate. As to slippage, Claimant also agreed that slippage is not based on a change in fiat currency value. Mr. Lowry also testified, but his testimony had no material impact.

Shivandi Gandhi testified on behalf of Respondents. The testimony was consistent with, and significantly expanded upon the Gandhi Declaration submitted in support of Respondents' dispositive motion. In part, Gandhi testified: (1) the blockchain is immutable; (2) it shows that on March 14, 2023 there was a swap conducted on a DEX known as Uniswap of approximately 527,061.27 tokens of WOOL (the "max" amount) for approximately 4.356 tokens of ETH, at or around 9:38:59 p.m. (3) the minimum "buy" amount was approximately 4.23 ETH, and the completed transaction exceeded the minimum; (4) as to the swap in this case there were no USD involved, and WOOL is not tradeable for USD or any fiat currency (it is illustrative only); (5) neither Respondent is a DEX, and neither controls a DEX; (6) the Coinbase Wallet Terms of Service indicates that Toshi Holdings has no liability for digital asset fluctuations or loss associated with use of the app, makes no warranties or representations, express or implied, about the linked third party materials, and the user assumes all risk; and (7) because it appears the USD price was vastly different from what was expected, Claimant was presented with a Price Impact Warning, which urged Claimant to try a smaller amount (of WOOL.)

## Legal Discussion

Claimant Stacey Cohen had an account with Coinbase.com and Coinbase Wallet account. However, the swap at issue here did not involve Coinbase.com, as WOOL is not tradeable on Coinbase.com.

In order to use the Coinbase Wallet app, Claimant agreed to the TOS, which limit the liability of Coinbase Wallet. While Claimant acknowledges she did not read the TOS, she acknowledges she had to agree to them in order to create an account. They are binding.

In pertinent part, the TOS state that Claimant used Coinbase Wallet "AT [HER] SOLE RISK" and "WITHOUT ANY REPRESENTATION OR WARRANTY, WHETHER EXPRESS, IMPLIED OR STATUTORY."

In addition, with regard to using a DEX for the swap, the TOS provides:

> "(1) Coinbase Wallet "make[s] no warranties or representations, express or implied, about [DEXs], the third parties they are owned and operated by, the information contained on them, the suitability of their products or services, or the assets they make accessible"; (2) Claimant "acknowledge[s] responsibility for and assume[s] all risk arising from [her] use of any [DEXs], third-party websites, applications, or resources"; and (3) Coinbase Wallet "shall not bear any liability, whatsoever, for any damage caused by any [DEXs.]"

Notwithstanding the language in the TOS, Claimant alleges that *Coinbase Wallet* quoted $0.93 per share for WOOL on March 14, 2023 (just before she initiated the swap), she never clicked on a link for

3

third party services, and she was never advised that pricing came from a third party. According to Claimant, her WOOL position was worth $480,033.63 in USD. She also contends the pricing is consistent with a third-party price chart from CoinMarketCap[4] and a screenshot she took after the swap was completed.

Claimant contends the $0.93 quote (in USD, a fiat currency) binds Coinbase Wallet, and is a measure of her damages. Respondents argue that the display of fiat currency is for illustrative purposes only, and is irrelevant, because consumers could not use Coinbase Wallet to trade WOOL for any fiat currency. Furthermore, the proper conversion rate is WOOL to ETH.[5]

Claimant did not produce a screenshot from before the swap, but it would have been difficult to anticipate the issues that have arisen here. Likewise, Respondents are not able to produce screenshots of Claimant's phone.

However, Respondents' demonstrative exhibit (RX-45) provides credible evidence of what Claimant would have seen when using the native swap function. The exhibit is comprised of four screens, as is a recreation of what the user interface looked like in March 2023, including the fiat currency value, and the price impact warning.

It is uncontroverted that there are circumstances where the fiat currency (USD) price (obtained via an API) is vastly different from what a user might expect. In those instances, the Coinbase Wallet app shows a price impact warning. In order to proceed, the user <u>must click</u> "Got it" below the advisement:

> **High price impact**
>
> Price is significantly worse that the market rate. Try a smaller amount.

Once the user elects to proceed, the next screen reiterates the warning. There is a red triangle with an exclamation point and this language:

> Price is significantly worse that the market rate.
> Try a smaller amount.

Below "try a smaller amount" that user <u>must click</u> either "Cancel" and "Swap" to proceed. If they do so, the quoted transaction is submitted to the DEX.

Respondents' Exhibit 44 confirms Claimant's actions as the swap was executed. As explained by Ms. Gandhi, Claimant tapped the Max button (to swap the maximum), was shown the price warning (trade.confirmation_preview_step.trade_anyway) on two screens, and *elected to proceed*.

Even if the source of the fiat pricing (USD) is unclear to the user, Claimant cannot state any claim.

---

[4] Respondents rely on CoinGecko as to the price of WOOL to ETH conversions on March 14, 2023. According to Ms. Gandhi, the 4.356 ETH exchanged for 527,061.274 WOOL fell between the high and low price points on March 14, 2023.

[5] The Coinbase.com webpage for WOOL states: "Coinbase makes no representation on the accuracy, suitability, or viability of any information provided or for a particular asset. Prices are shown for illustrative purposes only."

As to slippage, Claimant understood and agreed that slippage is not based on a change in fiat currency value, and that cryptocurrency was not being exchanged for fiat currency. Indeed, Claimant received 4.356 ETH, which is exactly what she authorized.

Claimant's claim that she made cryptocurrency swaps based on the USD value listed in, and disseminated by, Coinbase Wallet also fails.

It appears that Claimant initiated and completed the swap on March 14, 2023 because she thought it would be financially beneficial, and that the displayed fiat currency value impacted her decision. However, it is uncontroverted that the fiat currency value came from a third party. Indeed, both Claimant and Respondents submitted evidence as to the fiat value of the cryptocurrency on March 14, 2023 – from third party sources.

However, even if Claimant thought the fiat value displayed was from Respondents, she received at least two warnings that the price was "significantly different than the market rate." Nevertheless, Claimant affirmatively chose to proceed.[6]

## Award

Based on the facts and applicable law, the Arbitrator finds for <u>Respondents</u>. Claimant's claims are DENIED with prejudice.

The administrative fees of the American Arbitration Association (AAA) totaling <u>$2,750.00</u> shall be borne as incurred, and the compensation of the arbitrator totaling <u>$8,000.00</u> shall be borne as incurred.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

<u>December 10, 2024</u>  
Date

_____  
Patricia P. Hollenbeck, Arbitrator

---

[6] As noted *infra*, Claimant's Exhibit 7 (3/14/23 at 4:06 PM) also referenced the exchange rate and price difference: "there are two main reasons why a trade using a decentralized exchange might end up with less value references the slippage policy." Those two items are slippage and exchange rate ("before approving a trade quote, check to see if there is a warning of a price difference. This warning is important to review as it is stating the output is at a large difference from the spot price of the token at that moment.")